**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILLIAM G. TRUITT, JR.** ) <br> PO Box 826 ) <br> Culpepper, VA 22701 ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **THE HONORABLE BARBARA** ) <br> **BARRETT** ) <br> Secretary of the Air Force ) <br> Department of the Air Force ) <br> 1690 Air Force Pentagon ) <br> Washington, DC 20330-1670 ) <br> ) <br> **Defendant.** ) | No._____ |

**COMPLAINT**

Mr. William G. Truitt, Jr., by and through undersigned counsel, files this Complaint against the Secretary of the Air Force, Barbara Barrett, in her official capacity, alleging as follows:

**Parties**

1. Plaintiff William G. Truitt, Jr., was a member of the Virginia Air National Guard ("VANG") and member of the Air Force Reserves.

2. Defendant Barbara Barrett is the Secretary of the Department of the Air Force and is named in her official capacity as the head of the Department of the Air Force ("AF") with the authority to correct any AF military record.

**Jurisdiction and Venue**

3. This action seeks review of the Air Force Board for Correction of Military Records' ("the Board") final decision denying Mr. Truitt's application for the Correction of his AF

records. The Board's decision was arbitrary, capricious, contrary to law, and an abuse of discretion.

4. The Board's decision was a final agency decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a case arising under the laws of the United States. The relief requested herein is authorized under the APA and the Constitution of the United States.

6. Venue is proper in this Court under 28 U.S.C. § 1391(e) because this is the judicial district in which Defendant Secretary Barrett is located and is where a substantial part of the events or omissions giving rise to the claim occurred.

7. In accordance with 28 U.S.C. § 2401(a), this action is brought within six years of the Board's final decision.

**Factual Background**

8. Mr. Truitt honorably served in the United States military and was affiliated with the military for 22 years. Mr. Truitt grew up in a Navy household, which fostered an interest to serve his country and inspired Mr. Truitt to enlist in the United States Army from 1986-1994.

9. Between 1994 and 1998, Mr. Truitt earned his Bachelor's Degree, and in 1998, Mr. Truitt joined the Virginia Air National Guard ("VANG"). Mr. Truitt was assigned to the 192d Intelligence Squadron, 192 Fighter Wing, VANG, Langley Air Force Base, Virginia. During his service with the VANG, Mr. Truitt worked concurrently in the marketing and sales industry, the same industry Mr. Truitt is currently employed.

10. Mr. Truitt is a recovering alcoholic. Due to his alcohol disease, in 2008, Mr. Truitt suffered an acute pancreatitis attack requiring hospitalization. To alleviate the pain from this life-

threatening illness, and notwithstanding his alcohol addiction, doctors prescribed Mr. Truitt Vicodin, a highly addictive medication.

11. Vicodin is an opiate-based painkiller that has created an epidemic of drug-related deaths each year. In 2016, Virginia Governor McAuliffe issued a statement that the State Health Commissioner declared Virginia's opioid abuse crisis a public health emergency. Vicodin addiction is all-consuming and renders the abuser consumed with feeding his or her habit. Vicodin abusers commonly break the law in an attempt to acquire more of the drug.

12. Mr. Truitt's life hit rock-bottom when he became addicted to his medication and his doctors ended the prescription cold-turkey. Neither fully recovered nor gradually cut-off from the Vicodin, Mr. Truitt turned to opioids. Mr. Truitt's addiction to his prescription resulted in his arrest on May 19, 2009 for possession of opioids.

13. At the time of his arrest, Mr. Truitt had in excess of 18 years of creditable service.

14. Immediately following the arrest, Master Sergeant ("MSgt") Michael Pittman, Mr. Truitt's supervisor, attended a meeting with Chief Master Sergeant ("CMSgt") Jay Ellis, CMSgt Schat, and Lieutenant Colonel ("Lt Col") Kelvick, the Commander. During this meeting, MSgt Pittman was directed to order Mr. Truitt not to attend drill–also known as a Unit Training Assembly ("UTA")–until the situation was resolved.

15. His inability to attend UTAs then had an affect on his civilian Air Reserve Technician ("ART"), which is a civilian job tied to his ability to serve as a Reservist; he was now suspended his civilian job as well.

16. On November 23, 2009, Mr. Truitt appeared before the Circuit Court of the City of Newport News, where the judge decided to reserve any adjudication for a year to allow Mr. Truitt to participate in a rehabilitation program.

17. Mr. Truitt successfully completed a 90-day residential substance abuse treatment program at Hope by the Sea in California. Upon returning to Virginia, Mr. Truitt spent two years in the Oxford House, a drug free home to aid in the recovery from drug and alcohol addiction. Mr. Truitt remains involved with the organization by volunteering and distinguishing himself as one of the Oxford House's most valued servants.

18. On January 10, 2010, Mr. Truitt was served a Letter of Notification notifying him of the commander's intent to seek administrative discharge from the VANG.

19. As Mr. Truitt had over 18 years' active service and was approaching retirement, throughout 2010, Mr. Truitt repeatedly attempted to make arrangements to make up the drills he missed, attend future drills, and to reinstate his ART position. Mr. Truitt's commander denied each request.

20. After successful completion of the rehabilitation program and good behavior, the Court dismissed Mr. Truitt's possession charge on November 19, 2010.

21. The following day, November 20, 2010, Mr. Truitt's Administrative Separation Board ("ASB") convened. The ASB recommended discharge with an Under Other Than Honorable Conditions discharge and that he not be offered probation and rehabilitation.

22. It was not until the conclusion of the board, in December 2010, that Lt Col Michael Lovell authorized Mr. Truitt to perform rescheduled UTAs. However, Colonel ("Col") David Nardi, after acknowledging that provisions had been made to reschedule UTAs, provided "it is inappropriate for you to perform duty at this time."

23. Thereafter, MSgt Michael G. Pittman also made arrangements for Mr. Truitt to drill at an alternate location with the Joint Forces Headquarters. However, Mr. Truitt's commander denied this request.

24. Despite his desire, willingness, and availability to continue service, Col Nardi prevented Mr. Truitt from completing arranged UTAs, performance of which would have resulted in Mr. Truitt obtaining 20 years of service. Thereafter, Mr. Truitt was continuously denied an opportunity to drill with his unit.

25. No authority existed for such restriction on Mr. Truitt's VANG service. To the contrary, AFI 36-6-3209, 3.3.1, at the time, required members with 18 years of creditable service "to receive special consideration for retention on probation, to acquire minimum retired pay eligibility."

26. On March 15, 2011, Mr. Truitt's favorably endorsed the ASB's recommendation for separation with an Under Other Than Honorable characterization of service. Mr. Truitt, through counsel, requested consideration for rehabilitation argued he was within sanctuary due to his 18 years of service. The discharge action was reviewed and the discharge authority directed the case be forwarded to the Secretary of the Air Force for final review due his lengthy service. Mr. Truitt requested the Secretary mitigate the character of his discharge based upon his entire Air Force career.

27. While Mr. Truitt's discharge action was pending, and after Mr. Truitt's commander prevented him from attending UTAs, the VANG implemented AFI 36-3209, 6.1 on February 1, 2012:

> Members of the Virginia Air National Guard served with a Letter of Notification, advising the member they are being recommended for administrative discharge pursuant to one of the paragraphs referenced in the below table or having charges preferred against them pending court-martial, will immediately surrender their military identification card to their commander or first sergeant. The member will then be issued a memorandum, signed by the commander, authorizing the member to access military installations only for the purposes of receiving medical care or attending prearranged legal appointments. In no event will the member attend UTAs, RUTAs, BUTAs, or other military assemblies, events, or activities, unless authorized in writing by the Assistant Adjutant General for Air.

28. On March 6, 2012, the Secretary, contrary to the recommendation of the ASB, ordered Mr. Truitt be discharged with a General (Under Honorable Conditions) discharge.

29. Up until the date of his discharge, Mr. Truitt was willing and able to serve, including attending UTAs, and at all times followed all VANG orders and objectives. As a result of the discharge, Mr. Truitt was barred from receiving his pension and other benefits for which he would have been eligible absent his command's unlawful and arbitrary administration of process.

30. Though never convicted, on March 23, 2012, Mr. Truitt was discharged from the ANG with a reason for separation of "misconduct-civilian conviction" and was credited with 18 years, 9 months, and 12 days of active service.

31. Based upon the order directing Mr. Truitt not to attend drill with his VANG unit during the pendency of the administrative discharge proceedings, on April 23, 2013, Mr. Truitt submitted an application for relief and corrections of military records to the Board. In the petition, Mr. Truitt, through counsel, contended that he was given an unlawful order directing him not to attend UTAs after his arrest and that banning him from training while he was undergoing administrative discharge procedures was a de facto discharge without due process. Mr. Truitt argued that absent the commander's unlawful order for him to attend drill at his unit, his discharge package would have reached the Secretary of the Air Force with him being retirement eligible, allowing him to request special consideration for retirement.

32. In his petition, Mr. Truitt requested that he be retroactively credited with attendance at all unit training events for the period of May 2009 through March 2012 and that he be given appropriate retirement points for all unit training events that he missed.

33. The Board denied Mr. Truitt's petition on May 19, 2014, finding no error or injustice.

34. Mr. Truitt filed a petition for reconsideration, providing the Board information that two uniformed VANG members who failed drug tests were subsequently allowed to continue to serve as members of the VANG.

35. The Board denied Mr. Truitt's request for reconsideration on April 13, 2015.

36. Finally, as Mr. Truitt prepared this complaint following the 2015 denial, Mr. Truitt realized that his calculated service was incorrect. His final computed service (absent the UTAs that he should have been permitted to attend) should be 19 years, and not 18 years, 9 months, and 12 days. This calculation is based on the following two errors: (1) from the time served 6 November 1987 – 2 November 1988, he was only credited 11 months, 27 days, despite receiving 363 points toward retirement; and (2) for the time served 3 November 1993 – 17 August 1994, he was only credited 9 months, 15 days, despite receiving 56 points toward retirement. Per 10 U.S.C. § 12732, because Mr. Truitt received at least 50 drill points during those respective years, he was entitled to one full year of service for each. He submitted yet another petition on January 25, 2018, for correction of his calculated service,. The Board denied this request on September 10, 2019.

## FIRST CAUSE OF ACTION

### AFI 36-3209, 6.1 Is an Unconstitutional Ex Post Facto Law

37. The averments of the preceding paragraphs are incorporated as if fully set forth herein.

38. The Ex Post Facto Clause of Article I, Section 9 of the United States Constitution prohibits retroactively increasing an individual's punishment above that authorized by the law in effect at the time the offense was committed.

39. AFI 36-3209, 6.1 applied retroactively to Mr. Truitt and increased the punishment for an act committed before the VANG enacted AFI 36-3209, 6.1.

40. Mr. Truitt was arrested in May of 2009; Mr. Truitt was notified of the command's intent to seek administrative discharge in January 2010; and the court dismissed Mr. Truitt's possession charge in November of 2010. Yet, AFI 36-3209, 6.1 was not implemented until February 2012.

41. Controlling authority at the time of Mr. Truitt's arrest and discharge proceedings required the VANG provide Mr. Truitt, who had completed 18 years of creditable service at the time of his arrest, to "receive special consideration for retention on probation, to acquire minimum retired pay eligibility." AFI 36-6-3209, 3.3.1. Instead of complying with controlling regulations, the VANG prohibited Mr. Truitt from completing UTAs for 21 months.

42. AFI 36-3209, 6.1, which provides commanders the authority to prevent members from attending UTAs, was implemented after the VANG prohibited Mr. Truitt from completing UTAs. Prior to this supplement to the Air Force Instruction, the commander had no authority to prevent Mr. Truitt from attending UTAs.

43. AFI 36-3209, 6.1 retroactively changes the legal consequences of actions that were committed, before the enactment of the law or regulation. Here, AFI 36-3209, 6.1 changed the punishment prescribed for a crime by adding new penalties. The VANG's regulation violates the federal Ex Post Facto clause because its debilitating effects are clearly punitive.

44. The VANG implemented AFI 36-3209, 6.1, with the intent to punish those charged with a crime. The retroactive application of AFI 36-3209, 6.1 punished Mr. Truitt by preventing him from attending UTAs to reach his 20 years' of service.

45. Based on the foregoing, Mr. Truitt is entitled to relief under U.S. Const. art. I, § 9, cl. 3 and 706(2)(b).

## SECOND CAUSE OF ACTION

### The Board's Reliance on AFI 36-3209, 6.1 Was an Error of Law

46. The averments of the preceding paragraphs are incorporated as if fully set forth herein.

47. The Board's decision violated applicable Air Force rules, regulations, and policies in determining Mr. Truitt's separation was not wrong, unlawful, in error, or unjust.

48. The commander did not have the authority to prevent Mr. Truitt from attending the UTAs either at the time of his arrest or after the notice of intent for discharge was issued.

49. Controlling authority at the time required the VANG provide Mr. Truitt, who had completed 18 years of creditable service at the time of his arrest, to "receive special consideration for retention on probation, to acquire minimum retired pay eligibility." AFI 36-6-3209, 3.3.1. Instead of complying with controlling regulations, the VANG prohibited Mr. Truitt from completing UTAs for 21 months.

50. The Board's reliance on AFI 36-3209, 6.1, which provides commanders the authority to prevent members from attending UTAs, was an error of law. This regulation was implemented *after* the VANG prohibited Mr. Truitt from completing UTAs and is devoid of language allowing for retroactive application. Prior to this supplement to the Air Force Instruction, the commander had no authority to prevent Mr. Truitt from attending UTAs.

51. Not only was the application of AFI 36-3209, 6.1, an unlawful retroactive application of the regulation, the provision also conflicted with AFI 36-3209, 3.1, and AFI 36-3208, both of which entitle airman nearing retirement eligibility to special consideration.

52. Despite Mr. Truitt's efforts, Mr. Truitt's commander unlawfully prevented him from attending UTAs after his discharge and leading up to his discharge.

53. Knowing Mr. Truitt would have been retirement eligible if he attended UTAs, the command surreptitiously manufactured circumstances to manipulate the process and deprive Mr. Truitt of his ability to attend UTAs.

54. If Mr. Truitt would have been able to complete the minimum number of UTAs he is required to attend, he would have had enough time in service to be eligible for retirement.

55. Mr. Truitt was jurisdictionally bound to the VANG until his discharge from the service. During this time Mr. Truitt was still obligated to the VANG; the VANG restrained his liberty, but stripped Mr. Truitt of any benefit of his service and obligation.

56. As a result of his discharge and the ANG's failure to follow policies, procedures, and regulations, Mr. Truitt was barred from receiving his pension and other benefits for which he would have been eligible after 20 years of military service.

57. Based on the foregoing, Mr. Truitt is entitled to relief under 5 U.S.C. §§ 702 and 706(2)(a).

## THIRD CAUSE OF ACTION

**The Board's Decision Was Arbitrary, Capricious, and an Abuse of Discretion**

58. The averments of the preceding paragraphs are incorporated as if fully set forth herein.

59. The Board's determination the orders prohibiting Mr. Truitt from attending UTAs were not wrong, unlawful, in error, or unjust was arbitrary, capricious, and an abuse of discretion.

60. Despite Mr. Truitt's efforts, ANG regulations, and prior authorization in his command, Mr. Truitt's commander prevented him from attending UTAs from the time of his arrest until he was discharged.

61. The commander did not have the authority to prevent Mr. Truitt from attending the UTAs. Such order preventing Mr. Truitt from attending the UTAs was arbitrary, capricious, and an abuse of discretion.

62. The arbitrary and capricious order denied Mr. Truitt the opportunity to request transfer to the retired list. If Mr. Truitt would have been able to complete the minimum number of UTAs he is required to attend, he would have had enough time in service to be eligible for retirement.

63. The ANG's actions were further arbitrary and capricious because the charges against Mr. Truitt were dismissed and other members of the VANG have used drugs without punishment.

64. Finally, the Board's decision was arbitrary, capricious, and an abuse of discretion because it failed to follow 10 U.S.C. § 12732 in correcting his creditable years of service.

65. As a result of his discharge, Mr. Truitt was barred from receiving his pension and other benefits for which he would have been eligible after 20 years of military service.

66. Based on the foregoing, Mr. Truitt is entitled to relief under 5 U.S.C. §§ 702 and 706(2)(a).

## RELIEF SOUGHT

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in his favor, and:

a. Determine that the Board's decisions were contrary to law, arbitrary, capricious, and/or an abuse of discretion under the APA;

b. Order the AF credit Mr. Truitt with attendance at all scheduled UTAs and ATs from the period of May 2009-March 2012;

c. Order the AF award Mr. Truitt with the appropriate number of retirement points;

d. Order the AF transfer Mr. Truitt to the Retired Reserve;

e. Alternatively, order the AF to allow Mr. Truitt to perform rescheduled UTAs;

f. Award Mr. Truitt incurred reasonable attorney's fees and costs in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

g. Grant such other and further relief as this honorable Court deems just and proper to afford full and complete relief, to include a remand to the Air Force Board of Corrections of Military Records.

Dated: January 17, 2020                                      Respectfully submitted,

_____
Eric S. Montalvo, DC Bar No. 993206
FEDERAL PRACTICE GROUP
1750 K St., N.W., Suite 900
Washington, D.C. 20006
(202) 862-4360 Telephone
(888) 899-6053 Facsimile
emontalvo@fedpractice.com

*Attorney for Plaintiff*