**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WILLIAM G. TRUITT, JR.,** *Plaintiff,* v. **FRANK KENDALL**, *Secretary of the Air Force,* *Defendant.*[1] | Case No. 20-cv-963 (RCL) |

## MEMORANDUM OPINION

Plaintiff William G. Truitt, Jr. brings this suit to challenge the Air Force Board for Correction of Military Records' denial of Truitt's application for a correction of his records. ECF No. 1 ("Compl."). Specifically, Truitt alleges that the Board's denial of his request should be set aside as arbitrary and capricious under the Administrative Procedure Act ("APA"). *Id.* at ¶ 3; *see* 5 U.S.C. § 706(2)(A). Presently before the Court are the parties' cross-motions for summary judgment.

Upon consideration of the parties' filings (ECF Nos. 18, 26, 30 & 33), the administrative record (ECF No. 36-1), and the applicable legal standards, the Court will **GRANT** the Air Force's cross-motion for summary judgment, ECF No. 18, and will **DENY** Truitt's cross-motion for summary judgment, ECF No. 26. As the Air Force correctly argues, Truitt's commander had the authority to order Truitt not to participate in drill with his unit after his arrest for felony possession of heroin and guilty plea to that offense. Accordingly, the Board's refusal to credit Truitt with

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Frank Kendall was "automatically substituted as a party" when he was sworn in as Secretary of the Air Force on July 28, 2021. *See* Fed. R. Civ. P. 25(d).

1

participating in unit drill during the time he was prohibited from doing so was neither arbitrary nor capricious.

## I. BACKGROUND

### A. Truitt's Arrest & the Virginia Air National Guard's Response

Truitt enlisted in the Virginia Air National Guard in the fall of 1988 and served until the summer of 1994. ECF No. 18-1 at 8. Truitt then reenlisted in the spring of 1998 and served continuously until the incident that gave rise to this lawsuit. *Id.*

In May 2009, Truitt was arrested by Virginia police officers and charged with felony possession of heroin. ECF No. 36-1 ("Administrative Record" or "AR") at 15. Shortly after his arrest, Truitt's commander (Lieutenant Colonel Kjelvik) told Truitt's supervisor (Master Sergeant Pittman) to order Truitt not to participate in drill with his unit until Truitt's criminal charge was resolved. *Id.* at 15, 25, 28–29. Participation in the Virginia Air National Guard involves two types of unit drill: "Annual Tours," which typically last two weeks, and "Unit Training Assemblies," which are shorter in duration and typically occur once per month. *See id.* at 68; ECF No. 18-1 at 9. Truitt's supervisor prohibited him from participating in either. AR at 77.

In November 2009, Truitt pleaded guilty to felony possession of heroin in a Virginia state court. AR at 25, 77. The presiding judge withheld entering judgment for one year to allow Truitt to participate in a rehabilitation program. *Id.* Two months later, in January 2010, Truitt received a letter from the Air Force notifying him that his commander would be seeking Truitt's administrative discharge from the Virginia Air National Guard. *Id.*

In November 2010, approximately one year after Truitt pleaded guilty, the Virginia judge dismissed the felony drug charge due to Truitt's successful participation in a rehabilitation program. AR at 77. The next day, an Air Force Board of Inquiry recommended that Truitt be

discharged from the Virginia Air National Guard with an "other than honorable conditions service characterization." *Id.* at 15, 77. The Board of Inquiry's recommendation was then submitted to the Secretary of the Air Force Personnel Council for consideration. *Id.* at 77. The Secretary approved the discharge but ordered it to be under honorable conditions. *Id.* Truitt's administrative discharge became effective in approximately March 2012. *Id.* at 26, 77.[2]

From the time of his arrest in May 2009, until his administrative discharge became effective in March 2012, Truitt was continuously prohibited from attending drill. AR at 25. He "tried to make up the drills he had missed" but his commander would not let him. *Id.* On the date that Truitt's discharge became effective, Truitt had served in the Virginia Air National Guard for a total of eighteen years, nine months, and twelve days. *Id.* at 77. Had Truitt been allowed to participate in drill from the time he was arrested until the time his discharge became effective, however, Truitt would have reached the twenty-year requirement for retirement eligibility. *Id.* Doing so would make him eligible to receive a pension and other benefits. Compl. at ¶ 29.

**B. Truitt's First Application to the Board for the Correction of His Military Records**

In April 2013, Truitt submitted an application to the Air Force Board for Correction of Military Records ("the Board"). *See* AR at 20–33. His application asked the Board to retroactively credit him with attendance at all scheduled Unit Training Assemblies and Annual Tours from May 2009 until March 2012. *Id.* at 27. He also asked that "he be credited with the appropriate number of retirement points" and "transferred to the Retired Reserve." *Id.*

---

[2] Some documents in the administrative record indicate that Truitt's discharge became effective in March 2012 and others reflect that his discharge became effective in April 2012. *Compare* AR at 26, *and* AR at 77, *with* AR at 5, *and* AR at 15. This discrepancy has no effect on the Court's analysis. For the sake of simplicity, the Court will use the March 2012 date because this is the date Truitt provided to the Board. *See* AR at 26.

3

Truitt argued that the Board should give him credit for the time he was prohibited from attending unit drill because his commander's orders directing him not to attend drill were illegal. AR at 27. The orders were illegal, he claimed, because the Virginia Air National Guard "had no regulatory or statutory authority" to prohibit him from attending unit drill. *Id.* And, he argued, "had he not been illegally prohibited from attending [drill]" from May 2009 until March 2012, "he would have accumulated a sufficient number of retirement points and 20 qualifying years of service for retirement from the Virginia Air National Guard." *Id.*

Before the Board ruled on Truitt's application for the correction of his military records, the National Guard Bureau ("NGB/A1PP") and the Secretary of the Air Force Personnel Council ("SAF/MRBR") prepared non-binding recommendations to the Board on Truitt's application. AR at 68–70.[3] Both recommended that the Board deny Truitt's request. *Id.* at 15–16.

   *1. The National Guard Bureau's Recommendation*

The National Guard Bureau opined that Truitt should not be credited with attendance at Unit Training Assemblies and Annual Tours during the period between May 2009 and March 2012. AR at 68. It explained that Truitt's "commander legally ordered him not to attend drill pending an administrative discharge" and that Truitt is not "entitled to be credited for [the drills] that he missed while being discharged for his conduct which resulted in his arrest in May 2009." *Id.* The Bureau further opined that "Truitt's arrest involved a controlled substance which is conduct unbecoming of a non-commissioned officer." *Id.*

---

[3] In the administrative record, the National Guard Bureau is referred to as "NGB/A1PP" and the Secretary of the Air Force Personnel Council is referred to as "SAF/MRBR." *See* AR at 16–17. For the sake of clarity, the Court will use the full names.

4

*2. The Air Force Personnel Council's Recommendation*

The Air Force Personnel Council also recommended that the Board deny Truitt's application. *See* AR at 16–17. Like the National Guard Bureau, the Personnel Council opined that Truitt's commander had the authority to prohibit him from attending unit drill after his arrest and during the pendency of his administrative discharge proceedings. The memorandum explained:

> By the nature of the position and the military structure, [Air National Guard] and [U.S. Air Force] commanders have the authority to govern the members under their command, limited only by applicable federal (to also include AFIs [Air Force Instructions] or ANGIs [Air National Guard Instructions]) or state law. Part and parcel of that authority is the power to issue orders. An order is lawful if it is reasonably necessary to safeguard and protect the morale, discipline[,] and usefulness of the members of a command and it is directly connected with the maintenance of good order in the service. A commander's authority to exclude a member from duty is explicitly included in several AFIs. Duty is an obligation— not a right—and it is within a commander's purview to excuse or exclude members of his or her command, even when doing so results in loss of pay, allowances, and/or points. In this case, the fact known to the commander when he denied drill participation was [that Truitt] had pled guilty to felony possession of heroin. The order to deny participation could be construed as a reasonable response to protect people and assets from the risks posed by a known drug offender.

*Id.* at 16.

Truitt was given the opportunity to respond to both recommendations, which he did. *See id.* at 71–72.

*3. The Board's Denial*

The Board denied Truitt's application. AR at 13. It sent Truitt a letter notifying him of the denial, which was accompanied by a written "record of proceedings." AR at 14. The record of proceedings contained: (1) a summary of Truitt's application to the Board, (2) a statement of pertinent facts, (3) a summary of the National Guard Bureau's recommendation, (4) Truitt's

5

response to the National Guard Bureau's recommendation, (5) a summary of the Air Force Personnel Council's recommendation, (6) Truitt's response to the Personnel Council's recommendation, and (7) the Board's findings and an explanation for its findings. *Id.* at 14–19.

The Board explained that it "took notice of [Truitt's] complete submission," but that it agreed with the opinion and recommendation of the Personnel Council and adopted its rationale for the basis of its conclusion that Truitt "has not been the victim of an error of injustice." *Id.* at 17. The Board went on to agree that Truitt's commander "had ample legal basis upon which to act" to prohibit Truitt from participating in drill and found that "the lack of written guidance alone does not render such an order illegal." *Id.* at 17–18. Alternatively, the Board explained that "[m]embers who are administratively [dis]charged for cause are generally not eligible to transfer to the retired reserve without Secretary of the Air Force approval." *Id.* at 18. And here, the Board explained, it was highly unlikely that the Air Force would have authorized Truitt's retirement even if he had reached the twenty-year service requirement. *Id.* It concluded that "[o]ther than argument and conjecture, [Truitt] has provided no evidence whatsoever that would convince us the basis of his discharge was somehow insufficient, or that he was deprived of rights to which he was entitled." *Id.* For these reasons, the Board denied Truitt's request.

### C. Truitt's Request for Reconsideration of the Board's Denial

Truitt sought reconsideration of the Board's denial. AR at 42. In his request, Truitt once again argued that his commander lacked the authority to prevent him from attending unit drill from May 2009 to March 2012. *Id.* at 43. To support this claim, Truitt pointed to Air Force Instruction ("AFI") 36-3209, ¶ 6.1, which was implemented after his discharge. *See id.*

AFI 36-3209, ¶ 6.1 reads:

> **6.1. Letter of Notification of Preferral or Charges.** Members of the Virginia Air National Guard serviced with a Letter of

6

> Notification, advising the member they are being recommended for administrative discharge . . . will immediately surrender their military identification card to their commander[.] . . . In no event will the member attend [Unit Training Assemblies] . . . , or other military assemblies, events, or activities, unless authorized in writing by the Assistant Adjutant General for Air.

*Id.* at 45.

Truitt argued that the implementation of AFI 36-3209, ¶ 6.1 *after* his commander ordered him not to attend drill clearly indicates that, before its passage, Truitt's commander did *not* have the authority to prevent Truitt from attending drill. AR at 43. Indeed, Truitt claimed, there would have been "no need to implement an instruction to provide a commander authority if the commander already had the authority." *Id.* Truitt later supplemented his request for reconsideration with statements from three other members of the Virginia Air National Guard reporting previous incidences where a member failed a drug test but was still allowed to attend unit drill. *Id.* at 92–98.

The Board denied Truitt's request for reconsideration. AR at 9–12. It explained that "[a]fter again reviewing the evidence in [Truitt's] case, and taking into consideration the additional documentation provided by [Truitt]," the Board "remain[ed] unconvinced that corrective action is warranted." *Id.* at 11. The Board found the letters unpersuasive and instead explained that it would "restrict itself to deliberating on the available facts and circumstances associated with [Truitt's] case." *Id.* In any event, the Board explained, the "hearsay statements" are insufficient to "conclude that [Truitt] was deprived of rights to which he was entitled," that there was an "abuse of discretionary authority," or that Truitt "was treated differently than others similarly situated." *Id.*[4]

---

[4] Years later, in January 2018, Truitt submitted another request to the Board for correction of military records, which the Board denied. AR at 101. Truitt does not challenge his second denial in the present suit, so the Court need not address that request. *See* AR 100–123.

7

### D. Truitt's Federal Suit (The Present Action)

Unable to obtain relief from the Board, Truitt brought this suit in federal court to challenge the Board's refusal to award him credit for Unit Training Assemblies and Annual Tours that occurred during the period between his arrest in May 2009 and his administrative discharge in March 2012. *See* Compl. Truitt launches several challenges at the Board's denial. First, he alleges that AFI 36-3209, ¶ 6.1—which was implemented after his discharge—is "an unconstitutional ex post facto law." *Id.* at ¶¶ 37–45 (alteration in capitalization). Second, Truitt claims that the Board unlawfully relied on AFI 36-3209, ¶ 6.1 when denying his request for a correction of his military records. *Id.* at ¶¶ 46–57. Third, Truitt alleges that the Board's rejection of his application for a correction of his military records was "arbitrary, capricious, and an abuse of discretion" and thus should be set aside under the APA. *Id.* at ¶¶ 58–66 (citing 5 U.S.C. § 706(2)(A)). As for this last claim, Truitt alleges that the Board's denial was arbitrary, capricious, and an abuse of discretion because Truitt's commander lacked authority to order him not to attend drills. *Id.*

The Air Force answered, and the parties proceeded to discovery. ECF Nos. 9 & 11. After the close of discovery, the Air Force moved for summary judgment on all of Truitt's claims. ECF No. 18. The Air Force argues that "the Board correctly relied on the record and the law when it determined that [Truitt's] commanding officers had the inherent authority to order Truitt to not participate in [drill] with other service members while his criminal case and discharge proceedings continued." ECF No. 18-1 at 6. It further argues that the Board did not retroactively apply AFI 36-3209, ¶ 6.1 when it denied his request. *Id.* at 27.

In Truitt's combined opposition and cross-motion for summary judgment, Truitt did not respond to the Air Force's arguments regarding his challenges to AFI 36-3209, ¶ 6.1. *See generally*

8

ECF No. 26-1.[5] Instead, he argued only that the Board's denial was arbitrary and capricious because his commander lacked the authority to prohibit him from participating in unit drill after his arrest and while his administrative discharge was pending. *Id.* at 6. The Air Force filed a combination opposition to Truitt's cross-motion for summary judgment and reply in support of its motion for summary judgment. ECF Nos. 29 & 30. Truitt replied. *See* ECF No. 33.

The parties' cross-motions for summary judgment are now ripe for consideration.

## II. LEGAL STANDARDS

### A. Setting Aside a Final Agency Action as "Arbitrary and Capricious" Under the APA

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Federal courts may "hold unlawful and set aside" a final agency action if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at § 706(2)(A); *see id.* at § 704.

When deciding whether an agency action is arbitrary or capricious, courts may not substitute their judgment for that of the agency. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Instead, as long as the agency record contains "a rational connection between the facts found and the choice made," the agency action will stand. *Id.* (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Generally speaking, an agency's action is arbitrary and capricious if the agency: (1) "has relied on factors which Congress has not intended it to consider," (2) "entirely failed to consider an important aspect of the problem," (3) "offered an explanation for its decision that runs counter to the evidence before

---

[5] Truitt docketed his combination opposition and cross-motion for summary judgment twice. The first, ECF No. 25, is captioned as an opposition to the Air Force's summary-judgment motion. The second, ECF No. 26, is captioned as a cross-motion for summary judgment. These two documents are identical, so the Court will refer to them as Truitt's combination opposition and cross-motion for summary judgment.

9

it," or (4) makes a decision "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*

Federal courts are "unusually deferential" when considering whether a decision of the Air Force Board for the Correction of Military Records is arbitrary and capricious. *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). This doubly deferential standard flows from the language of the statute authorizing the Air Force Board for the Correction of Military Records to act. *See id.* Under 10 U.S.C. § 1552(a)(1), the "Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). This "broad grant of discretion" to the Secretary of a military department "substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination." *Kreis*, 866 at 1514. As the D.C. Circuit has explained, it is "more difficult to say that the Secretary has acted arbitrarily if he is authorized to act '*when he considers it necessary* to correct an error or remove an injustice,' than it is if he is required to act whenever a court determines that . . . there has been an error or injustice." *Id.* (internal citation omitted). Under this highly deferential standard of review, "only the most egregious decisions" by the Air Force Board for the Correction of Military Records may be set aside as arbitrary and capricious. *Id.* at 1515.

### B. Summary Judgment in the APA Context

Typically, Federal Rule of Civil Procedure 56 governs the resolution of summary-judgment motions. That Rule directs courts to grant summary judgment if the movant "shows there is no genuine dispute as to any material fact" and that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases involving review of a final agency action under the APA, however, Rule 56's standard does not govern. *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89–90

(D.D.C. 2006). That is so because under the APA, it is the role of the *agency*, not the district court, to resolve factual issues and to reach a decision that is supported by the administrative record. *Id.* at 90. Thus, when faced with a summary-judgment motion on an APA claim, the district court must determine *as a matter of law* whether the agency's decision was arbitrary, capricious, an abuse of discretion, or unlawful. *See id.* (citing *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)) (emphasis added). In other words, the district court sits as an "appellate tribunal" and must answer these legal questions based on the evidence in the administrative record. *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

### III. DISCUSSION

Before addressing the parties' arguments in their cross-motions for summary judgment, the Court must clarify the issue before it. Truitt alleged three errors in his complaint. He claims that (1) AFI 36-3209, ¶ 6.1 "is an unconstitutional ex post facto law," (2) that the Board's reliance on AFI 36-3209, ¶ 6.1 was an error of law, and (3) that the Board's denial of his application should be set aside as arbitrary, capricious, and an abuse of discretion under the APA. Compl. at ¶¶ 37–66. The Air Force moved for summary judgment on all three claims. *See* ECF No. 18-1. But when Truitt filed his combined opposition and cross-motion for summary judgment, he addressed only the APA claim. *See* ECF No. 26-1. The Court will therefore treat Truitt's other two claims as conceded. *See Hayes v. District of Columbia*, 923 F. Supp. 2d 44, 49 (D.D.C. 2013). Thus, the only issue before the Court is whether the Board's denial of Truitt's application for a correction of his military records should be set aside as arbitrary or capricious under the APA. *See* 5 U.S.C. § 706(2)(A).

## A. Truitt's APA Claim is Justiciable

The justiciability of claims seeking review of military action is limited by the "fundamental and highly salutary principle" that the judiciary must be "scrupulous not to interfere with legitimate Army matters." *Kreis*, 866 F.2d at 1511 (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93–94 (1953)). Indeed, the U.S. Constitution vests "'[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Id.* (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)). For this reason, a service member's claim seeking a retroactive promotion, for example, "falls squarely within the realm of nonjusticiable military personnel decisions." *Id.*

But not all claims involving military action are immune from judicial review. As the D.C. Circuit has held, federal courts have jurisdiction to review APA challenges to decisions by military records correction boards. *Kreis*, 866 F.2d at 1512 (holding that the district court erred by dismissing a claim challenging the Air Force Board for Correction of Military Records' denial as arbitrary and capricious under the APA); *accord Piersall v. Winter*, 435 F.3d 319, 321–22 (D.C. Cir. 2006) ("We have many times reviewed the decisions of boards for correction of military records in light of familiar principles of administrative law.") (internal quotation marks omitted). Thus, the Court may consider Truitt's APA challenge to the Board's denial of his request for a correction of his military records.

## B. The Board's Denial of Truitt's Application for a Correction of His Military Records Was Not Arbitrary or Capricious

After reviewing the entire administrative record and the Board's written denial of Truitt's application for a correction of his military records, the Court finds that the Board's decision was neither arbitrary nor capricious. *See* 5 U.S.C. § 706(2)(A). The Board decided that there was no "error or injustice" warranting a correction of Truitt's military records because Truitt's commander

12

"had ample legal basis" to order Truitt not to attend unit drill after his arrest and while his administrative discharge was pending. AR at 17. It further adopted the Personnel Council's opinion that "[t]he order to deny participation [in unit drill] could be construed as a reasonable response to protect people and assets from the risks posed by a known drug offender." *Id.* at 16.

As the Board recognized, the Air Force has a legitimate interest in maintaining the safety and order of its ranks by preventing drug offenders from participating in unit drills. The commander's order was certainly a rational response to Truitt's arrest and subsequent guilty plea to felony possession of heroin. Accordingly, the Board's refusal to credit Truitt with attendance at unit drills from May 2009 to March 2012 was far from "egregious." *Kreis*, 866 F.2 at 1514.

Nor are any of the other hallmarks of an arbitrary or capricious agency action present here. The Board did not "entirely fail to consider an important aspect of the problem." *Motor Vehicle Mfrs. Assoc.*, 463 U.S. at 43. Nor did it "offer an explanation for its decision that runs counter to the evidence before the agency." *Id.* The administrative record shows that Truitt's commander ordered him not to attend unit drill after he was arrested for felony possession of heroin in May 2009. AR at 15. Once Truitt pleaded guilty to that offense in November 2009, the Virginia Air National Guard initiated administrative discharge proceedings. *Id.* The evidence before the Board thus supports its rationale that refusing to give Truitt credit for drill during this time was not an "error or injustice." *Id.* at 16. Next, the Board's decision was not "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Assoc.*, 463 U.S. at 43. To the contrary, the Board's decision makes perfect sense; a branch of the U.S. military has a strong interest in ensuring that drug users are not among its ranks. And finally, the Board has not "relied on factors which Congress has not intended it to consider." *Id.*

Truitt's arguments to the contrary are unpersuasive. First, he argues that the Board's denial of his application for a correction of his military records was arbitrary and capricious because his commander's order prohibiting him from attending unit drill was unlawful. ECF No. 26-1 at 10–12. It was unlawful, he says, because the order exceeded the guidelines set forth in ANGI 36-2001, ¶ 3.3. *Id.* At the time Truitt was prohibited from attending unit drill, ANGI 36-2001, ¶ 3.3 listed a handful of reasons why a commander "may excuse a member" from all or a portion of an Annual Tour. ANGI 36-2001, ¶ 3.3 (provided in ECF No. 30-1 at 6).[6] Truitt argues that the list set forth in ¶ 3.3 is exhaustive by deceptively including the word "only" in his brief before quoting the regulation. *See* ECF No. 26-1 at 11.

But as the Air Force correctly notes, ¶ 3.3 simply lists *some* of the reasons why a commander *may* excuse a member from an Annual Tour. ANGI 36-2001, ¶ 3.3; ECF No. 30 at 6–7. The list is not exhaustive. *See* ANGI 36-2001, ¶ 3.3 (providing that "[a] commander may excuse a member (documentation required) from all or a portion of 15 days of [Annual Tour] if one or more of the following applies"). Thus, the fact that ¶ 3.3 does not list excusal from an Annual Tour due to a member's arrest or guilty plea to a felony drug charge does not make that excusal unlawful. *See United States v. Kisala*, 64 M.J. 50, 52 (CAAF 2006) (recognizing that a commander's order to his subordinate can be lawful even when that order is not explicitly authorized by statute or regulation).

Second, Truitt argues that the Board's decision was arbitrary and capricious because his commander's order not to attend unit drill "directed Truitt to commit an illegal activity." ECF No. 26-1 at 12 (capitalization altered). The Air Force urges the Court to disregard this argument since

---

[6] The January 15, 1997 version of ANGI 36-2001 was in effect in May 2009 when Truitt's commander initially ordered him not to attend unit drill. In October 2009, ANGI 36-2001 was replaced with a new version, but the language of ANGI 36-2001, ¶ 3.3 in the new version did not change.

it was not alleged in Truitt's complaint or raised before the Board. *See* ECF No. 29 at 9. The Air Force is correct that Truitt's argument is late coming. *See generally* Compl. And even if Truitt had properly preserved it, his argument would still fail. Truitt says that under ANGI 36-2001, ¶ 6.3, attendance at Unit Training Assemblies is mandatory. ECF No. 26-1 at 12. Thus, he argues, his commander's order not to attend Unit Training Assemblies directed Truitt to engage in an "illegal activity." *Id.* But under this theory, a commander could *never* excuse a member from Unit Training Assemblies. Not only is this theory absurd, but it is directly undercut by ANGI 36-2001, ¶ 6.3.6.2, which permits commanders to grant excused absences for Unit Training Assemblies. *See* ANGI 36-2001, ¶ 6.3.6.2 (provided in ECF No. 30-1 at 10). Truitt's reliance on ANGI 36-2001, ¶ 6.3 is thus unpersuasive.

Finally, Truitt says that because he was physically and mentally capable of attending unit drill, his commander could not prohibit him from doing so. ECF No. 26-1 at 13. But ANGI 36-2001, ¶ 3.3 shows that this is not the case. That regulation lists a handful of reasons for which a commander may excuse a service member from his or her Annual Tour duties. ANGI 36-2001, ¶ 3.3 (provided in ECF No. 30-1 at 6). Many of these reasons have nothing to do with physical or mental fitness. *See id.* So Truitt's final argument fails.

Accordingly, the Court finds as a matter of law that the Board's denial of Truitt's application for a correction of his military records was not arbitrary or capricious under the APA. *See* 5 U.S.C. § 706(2)(A).

## IV. CONCLUSION

For these reasons, the Court will **GRANT** the Air Force's cross-motion for summary judgment, ECF No. 18, and will **DENY** Truitt's cross-motion for summary judgment, ECF No. 26. A separate Order consistent with this Memorandum Opinion shall issue contemporaneously.

Date: August 13, 2021

Royce C. Lamberth
Hon. Royce C. Lamberth
United States District Judge